STERLING CYCLE WORKS *v.* WILLINGHAM.

109  559
s113 953

1. Where immediately after executing a written contract guaranteeing to an amount stated payment for goods to be ordered by a partnership the guarantor made a parol promise to pay for all goods so ordered, and subsequently wrote letters to the other party to the written contract containing promises to pay an indebtedness of the partnership, the nature and extent of which was not in such letters explicitly stated, evidence of the parol promise was admissible for the purpose of explaining the true intent and meaning of the letters.

2. There was, in the present case, sufficient evidence of the making of the promise relied on by the plaintiff, and of a consideration supporting the same, to carry the entire case to the jury.

Argued December 7, 1899.— Decided January 26, 1900.

Complaint. Before Judge Reid. City court of Atlanta. May term, 1899.

*Mayson & Hill*, for plaintiff.   *Culberson & Willingham* and *Westmoreland Brothers*, for defendant.

LEWIS, J.   The Sterling Cycle Works brought suit against E. G. Willingham, in the city court of Atlanta, for $1,071.65. After plaintiff had introduced testimony and closed its case the judge below, upon motion of defendant's counsel, granted a non-

suit. To this judgment the plaintiff in error excepts. It appears from the record that the plaintiff was a dealer in bicycles, and that it had established an agency, composed of the firm Cabaniss & Castle, for the sale of its goods in the city of Atlanta. Cabaniss retired from this firm, having sold out his interest to R. F. Willingham. The agency was then represented by Willingham & Castle. R. F. Willingham was a son of the defendant, E. G. Willingham. There was evidence tending to show that the defendant, E. G. Willingham, was instrumental in getting his son into the business, and bringing about an arrangement by which the agency for the sale of these goods succeeded to Willingham & Castle. On the 8th of May, 1897, the plaintiff and "Willingham & Co." entered into a written contract. While this contract was signed "Willingham & Co.," E. G. Willingham, the defendant in this case, was really the party constituting the firm of Willingham & Co. The contract was, therefore, by the parties treated as his individual contract with the Sterling Cycle Works. Under the terms of that agreement, the plaintiff agreed to sell and deliver to Willingham & Castle such goods as it kept in stock, in such quantities and at such prices as the plaintiff and Willingham & Castle might agree upon. In consideration of this agreement, E. G. Willingham, defendant herein, guaranteed to the plaintiff the payment at maturity for any and all purchases from the Sterling Cycle Works, made prior to, or on, or after the date of the contract, May 8, 1897, by and in the name of Willingham & Castle. It was further agreed in the written contract that the liability of E. G. Willingham should not be for a larger sum than $2,000.00, unless made by another special agreement. There is evidence in the record tending to show that the past indebtedness for which Willingham & Castle were liable to the plaintiff amounted to within about $500.00 of the limit fixed in the guarantee contract between plaintiff and defendant. The agency was conducted for a short while by the firm of Willingham & Castle, and Castle agreed to withdraw from the firm for the sum of $65.00. In consideration of this, there is testimony to the effect that E. G. Willingham promised Castle to be responsible for all the indebtedness of Willingham & Castle,

including the amounts which were due to the plaintiffs in this case. There was also testimony from which it might be inferred that the assets thus recovered by E. G. Willingham were of value more than sufficient to pay off this indebtedness of Willingham & Castle.

The following is the substance of some letters introduced by plaintiff on the trial: On July 21, 1897, E. G. Willingham wrote the Sterling Cycle Works to the effect that Willingham & Castle had in two months sunk about $1,200.00, and perhaps more; that it was useless for him to go into reasons why he should not allow the business to run any longer in this way; and he concluded that it was best for him to buy out the business, which he had done. He would use his best efforts to place plaintiff's wheels on the market, and he wrote to inquire if plaintiff wished him to keep the agency for the wheel for another year. In his letter he further alluded to the fact that, as the business had been started there, his son might continue, after he had become more experienced, and might possibly make a success of it. Everything had been against him (his son) up to now, and, "while I am the loser, yet in the future he may be benefited." He then asked for an itemized statement of "their" account, referring evidently to the account of Willingham & Castle. To this a reply was made on the 23d of the same month by the Sterling Cycle Works, in which, among other things, it was agreed that E. G. Willingham should retain and have the agency of the business, and in which it enclosed a statement of the account asked for by him. To this, on July 27th, E. G. Willingham replied, acknowledging receipt of the bill against Willingham & Castle, for which he expressed thanks, and stated that he would check every bill, and write in a day or two how the account stood. He also stated that he would get things in such shape as to pay plaintiff some money along, or close the account by note, so that the old business could be settled up. That was replied to by the plaintiff during the same month, in which reply plaintiff indicated that the arrangement proposed by E. G. Willingham to make a cash remittance or note settlement was entirely satisfactory. A few days thereafter plaintiff again wrote the defendant, en-

closing statement of account amounting to $2,714.39, recognizing that there would be certain credits made for items returned which would reduce this amount slightly. Plaintiff again wrote to the defendant subsequently during the same month, asking, in effect, for a partial payment of cash on the amount due. If he could not do that, to send notes maturing at certain times in the future, with interest, and that would be satisfactory. In September, 1897, plaintiff wrote the defendant another letter, enclosing a statement of account, after crediting various items of merchandise it had lately received from defendant; and called attention to defendant's letter of August 24th, in which he suggested that when certain items had been credited he would send plaintiff check to close the account, including interest on the notes. Plaintiff then offered that if the defendant would send a check in settlement by a certain date, plaintiff would waive the question of interest. Finally, on September 21, 1897, E. G. Willingham replied by letter to the Sterling Cycle Works, expressing surprise at the statement showing Willingham & Castle owing, on account and in notes, an amount of $1,100.00 over and above the last payment made by defendant to plaintiff. He further added in his letter, he was under the impression the balance would be only about $160.00, but if the account stood as plaintiff reported, he would comply only with his bond.

In the course of the trial plaintiff offered to prove certain declarations made by the defendant to plaintiff's representative, in answer to a suggestion that the amount of the guarantee be increased so as to give them (meaning Willingham & Castle) a sufficient margin of credit to enable them to put in a fair stock of wheels. Defendant replied that he did not feel disposed to increase the amount of the written guarantee, as he did not care to have the young men think they had the liberty to order to an unlimited extent; but that the plaintiff need have no hesitancy in filling their orders, as he personally would be responsible for, and would see paid, any indebtedness which they might incur, whether the same was in excess of the amount of the guarantee or not. This matter was referred to by the defendant more than once, and, after the time when all the de-

tails had been arranged and practically settled, he repeated his assurance that, in view of the fact that he intended to give the business his personal attention until such time as his son had mastered all the details and had shown sufficient ability to handle the financial end alone, he personally would be responsible. It was sought by this evidence to establish another agreement separate and distinct from the written contract, and made subsequently thereto.     But the court excluded this testimony (sayings of the defendant) from the jury; to which ruling plaintiff in error excepts.     There is evidence in the record tending to show that, on the faith of these verbal promises, goods were furnished Willingham by plaintiff in error in excess of the $2,000.00 mentioned in the written guarantee.

Viewing all the testimony introduced and sought to be introduced upon this subject, we think there were facts sufficiently shown, and offered to be shown, to authorize the jury to infer that this parol agreement was made and entered into subsequently to the written agreement, and constituted a valuable consideration for the contract sued upon.     These declarations of the defendant were further admissible in explanation of the letters subsequently written by the defendant, touching a settlement of the account that had been made by Willingham & Castle. It does not clearly appear from those letters to what extent E. G. Willingham had assumed the indebtedness of this partnership. Some of his letters on the subject are susceptible of the construction that he contemplated being responsible for the entire indebtedness, whether it amounted to more than the sum stipulated in his written contract or not.     The verbal statements sought to be introduced, and which were ruled out by the court, clearly indicate such was his purpose; and we think, for that reason, if for none other, they were admissible for the purpose of explaining the true intent and meaning of the letters.     We have not undertaken above to call attention to all the evidence introduced in behalf of the plaintiff, which is quite voluminous, but only to such prominent features in it as tend to show a valuable consideration for the contract sued on in this case.     In the light of the entire record, we can not say that there is not sufficient testimony for the jury to really infer

an original undertaking on the part of E. G. Willingham, made after the written agreement was entered into, to pay the entire account of Willingham & Castle, on the faith of which credit for goods sold them over and above the $2,000.00 limit mentioned in the original contract was really extended to E. G. Willingham himself. Our conclusion, therefore, is that the court erred in granting a nonsuit.

*Judgment reversed. All the Justices concurring.*